In re GRAND JURY INVESTIGATION,
JOHN DOE 1078 (Movant).

In re GRAND JURY INVESTIGATION,
JOHN DOE 1078 (Movant Two).

No. 88–2.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 15, 1988.

Larry Leiser, Asst. U.S. Atty., Alexandria, Va., for U.S.

Lisa B. Kemler, William B. Moffitt & Associates, Alexandria, Va., Joel Hirschhorn, Miami, Fla., for movants.

Michael Tarre, Coral Gables, Fla., for movant two.

## ORDER

ELLIS, District Judge.

This matter came before the Court on movant's and movant two's (names of the entities are omitted as grand jury proceedings are ongoing) motions to quash subpoenas duces tecum for the production of video tapes, films and magazines. The subpoenas seek materials of a sexually explicit nature.[1] Movant and movant two are distributors of films, video tapes and magazines. Apparently, neither company has a showroom in which its stock is publicly displayed. Movant has an inventory of approximately 100 eight millimeter films and 1000 to 4000 magazine titles and movant two has approximately 100 video tapes. Counsel represented during the hearing that movant two has no material that falls within the subpoenas. Movant two's motion is therefore moot. Accordingly, this Order concerns only movant's motion to quash.

Movant opposes production on the grounds that the subpoenas are oppressive, unduly vague, unreasonable and violative of the Fifth Amendment.[2] According to movant, the burden of complying with the subpoenas will have an intolerable chilling effect on the free exchange of ideas. Moreover, movant argues that the subpoenas are unreasonable when measured by Fourth Amendment principles. In support of its position that the subpoenas are unduly burdensome and unreasonable, movant principally relies on the Fourth Circuit's original opinion in *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291 (4th Cir.1987) [hereinafter *Grand Jury I*], *modified on petition for reh'g*, 844 F.2d 202 (4th Cir.1988) [hereinafter *Grand Jury II*]. Finally, movant contends that production of the requested materials might violate the custodian's Fifth Amendment privilege against self incrimination because production necessarily implies possession of such materials.

■ The Court starts with the proposition that the materials sought are presumptively protected by the First Amendment. *Grand Jury I*, 829 F.2d at 1296 & n. 5.[3] On the other hand, the Court must also recognize the grand jury's broad investigative powers. *Id.* at 1297; *see also United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). As the Fourth Circuit has stated, "courts should not interfere with the grand jury process absent compelling reason." *In re Weiss*, 596 F.2d 1185, 1186 (1979).[4] Where

---

1. There are a total of 16 subpoenas directed to each company. Each subpoena seeks materials containing depictions of certain specified sexual activity. More precisely, the subpoenas identify the following activities involving either adults or persons under 18 years of age:
   1. sadistic or masochistic sexual behavior;
   2. masturbation;
   3. sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the same or opposite sex;
   4. bestiality.
   The government voluntarily withdrew subpoenas for video tapes and films depicting "sexually explicit conduct, that is, torture."

2. Movant also argued in its briefs that production would constitute a prior restraint on freedom of expression in violation of the First Amendment. *See Near v. Minnesota*, 283 U.S. 697, 713–22, 51 S.Ct. 625, 630–33, 75 L.Ed. 1357 (1931). During the hearing, movant's counsel limited the prior restraint argument to instances where only single copies exist of the films or magazines subpoenaed. It is undetermined as of now whether there are any such instances of single copies that are responsive to any subpoena. If so, the government has committed to copy the material within 24 to 48 hours and return it to movant. Since it is not yet clear whether any such single copies exist, the Court need not reach at this time whether the government's copying proposal is adequate to obviate the prior restraint problem.

3. Sexually explicit material is not stripped of constitutional protection unless and until a factfinder at trial concludes that the work, taken as a whole, meets the three-pronged test set forth in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). *See also Roth v. United States*, 354 U.S. 476, 487–89, 77 S.Ct. 1304, 1310–11, 1 L.Ed.2d 1498 (1957).

4. As the Supreme Court stated in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed. 2d 561 (1974):
   Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor

a subpoena seeks presumptively protected materials, the Court must balance two competing concerns:

> the interest of the public and the government in ferreting out crime ... and the interest of the subpoena's target in conducting a business.... The critical inquiry, assuming that the hurdle of relevancy has been cleared, is whether there is too much indefiniteness or breadth in the things required to be produced by the subpoena.

*Grand Jury I*, 829 F.2d at 1298. The potential chilling effect the subpoenas might have on protected expression and the reasonableness of the subpoenas in light of Fourth Amendment principles are concerns which deserve accommodation in the balancing process. *Id.* at 1300.

At this stage of the proceeding, the Court strikes the balance in favor of the validity of the subpoenas. Contrary to movant's argument, *Grand Jury I* does not dictate quashing the subpoenas. While that opinion suggests it is improper to require sellers of presumptively protected materials to view their inventory and identify items which satisfy subpoenas, *see id.* at 1302 n. 15, that suggestion is not binding on this Court. On a petition for rehearing,

the Fourth Circuit rested its reversal of the contempt convictions solely on the ground that the subpoenas were impermissibly vague.[5] *Grand Jury II*, 844 F.2d 202, 203. Although *Grand Jury I* is therefore not controlling, this Court nonetheless attempts here to address the concerns expressed in the majority's opinion.

■ Movant has made no convincing showing that the subpoenas are vague or that compliance would require burdensome viewing of each item. The subpoenas are reasonably specific. The Court is convinced that the company's custodian will be able to identify readily any materials containing, for example, bestiality, masturbation and oral, anal and vaginal intercourse. Importantly, the subpoenas do not ask the custodian to make judgments as to whether particular materials are obscene, but simply to ascertain whether they depict these specific acts. *See Grand Jury I*, 829 F.2d 1291, 1305 (Wilkinson, J., concurring). This task, given the acts specified, should not be difficult. No difficult exercise of judgment is called for in recognizing or identifying such acts as bestiality, masturbation and intercourse.[6]

---

its proceedings. It deliberates in secret and may determine alone the course of its inquiry.... [I]ts operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."

*Id.* at 343, 94 S.Ct. at 617 (quoting *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919)).

**5.** The subpoenas requested, *inter alia*, materials which depicted "lascivious (lewd, lustful) exhibition of the genitals or pubic area." *Grand Jury I*, 829 F.2d at 1293.

**6.** No discussion of the difficulty or lack of difficulty of identifying obscenity is complete without recalling Justice Stewart's classic observation that he might not be able intelligibly to describe hard core pornography, but "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964)

(concurring). The material described and sought in the subject subpoenas is also instantly recognizable. Significantly, however, it can be, and is, intelligibly described in the subpoenas. Moreover, unlike the potential for differences of opinion on what is obscene, it is unlikely that people would disagree on whether a picture or scene depicts such sex acts as bestiality, masturbation or anal, oral or vaginal intercourse. Nor is the determination made more difficult simply because one half of the subpoenas call for material depicting persons under eighteen engaged in the various sex acts. Since the same material is sought with respect to adults, movant need only ascertain whether the material depicts the acts described. If so, the material must be produced whether or not minors are included in the depictions.

It should also be noted that child pornography is not entitled to First Amendment protection and may be banned even though it does not meet the test for obscenity established in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), and *Roth v. United States*, 354 U.S. 476, 487–89, 77 S.Ct. 1304, 1310–11, 1 L.Ed.2d 1478 (1957). *New York v. Ferber*, 458 U.S. 747, 764, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982).

At the same time, the wording of the subpoenas ensures that the materials requested are "substantially related to the investigation," because there is a "strong possibility" that the materials requested may be obscene. *Grand Jury I*, 829 F.2d at 1305 (Wilkinson, J., concurring). Thus, unlike the subpoenas at issue in *Grand Jury I*, there is no significant likelihood that protected expression will be restricted due to the subpoenas. *Id.* at 1305–06.

█ The *Grand Jury I* panel also expressed concern that forcing distributors to view inventory to comply with subpoenas would be unacceptably burdensome. *Id.* at 1298–99, 1302 & n. 15 (majority opinion). Movant here has adduced no persuasive evidence that the amount of viewing time required to comply with the subpoenas will be·excessive. *Id.* at 1307 & n. 1 (Wilkinson, J., concurring). It appears to the Court that for most films, movant should be able to determine the nature of the contents from the box and any accompanying descriptive material. The contents of magazines may be quickly and easily determined by thumbing through the pages. Indeed, in some instances, movant will doubtless be able to "judge the book by its cover." Additionally, common sense dictates that movant and its employees, as purveyors of films and magazines, have at least some familiarity with the general content of these materials. Purveyors of sexually explicit materials, like purveyors of other products, surely know something about their inventory. After all, the materials are purchased for resale to distributors and ultimately to consumers. As a business entity, movant must make judgments about whether the materials it offers will sell in the market; these judgments cannot be made without some knowledge of the contents of films and magazines.[7] Moreover, movant is not required to achieve exactitude in complying with the subpoenas. All that is required is good faith. *See In re Sealed Case*, 825 F.2d 494, 498 (D.C.Cir. 1987), cert. den., —— U.S. ——, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987) (bank should not have been held in contempt where it acted in good faith in refusing to produce documents); *United States v. Metropolitan Disposal Corp.*, 798 F.2d 1273, 1274 (9th Cir.1986) (contempt conviction upheld where district court found willful violation of subpoena duces tecum and court's order requiring production of documents), *United States v. Greyhound Corp.*, 508 F.2d 529, 531 (7th Cir.1974) (showing of willfulness is necessary to support a conviction for criminal contempt). In sum, movant has failed to carry its burden of demonstrating to the Court that compliance with the subpoenas would require an unreasonable amount of viewing time.

█ Compliance with any subpoena imposes some burden on the recipient. *See In re Grand Jury Proceedings*, 801 F.2d 1164, 1170 (9th Cir.1986) (subpoena upheld where it requested, *inter alia*, contracts for purchase or sale of, and prescriptions for, certain drugs and records of sales of any prescription drugs during previous three years); *In re Grand Jury Subpoena Served Upon Crown Video*, 630 F.Supp. 614, 620 (E.D.N.C.1986) (request for documents indicating name and address of each entity from which company had received video tapes and each entity to which company had sent ten or more video tapes during specified period, as well as documents relating to other dissemination of the materials, was not oppressive). In short, the imposition of some burden does not invalidate a subpoena. All subpoenas have this effect, at least to some extent. Corporate custodians are often required to conduct time consuming, expensive and disruptive searches for subpoenaed material.[8]

---

7. For example, where the targeted audience is a general family audience, a distributor will choose films of the *Sound of Music* or *Mary Poppins* genre. On the other hand, if the audience is composed of persons interested in anal intercourse, oral sex or sadomasochism, the distributor will take steps to ensure that it purchases such material as *Girls of the A–Team* (anal intercourse), *Wet Shots* (oral sex) or *Punishment of Anne* (sadomasochism). For a description of each of these videos, *see United States v. Pryba*, 678 F.Supp. 1225, 1227 (E.D.Va.1988).

8. *See In re Midland Asphalt Corp.*, 616 F.Supp. 223, 224, 225 (W.D.N.Y.1985) (subpoenas not unreasonable even where total cost of compli-

The question is whether the burden is excessive in the circumstances.[9] When presumptively protected material is sought, an added burden may be restriction in the dissemination of ideas. In light of all this and giving due weight to the First and Fourth Amendment concerns addressed by the majority in *Grand Jury I*, the Court finds that the burden of compliance here is not unreasonable.

■ The Court is sensitive to the *Grand Jury I* majority's admonition that the grand jury should obtain presumptively protected material using the least intrusive means possible. *Id.* at 1301 & n. 13, 1302. The majority concluded that the least intrusive means was for the government to buy tapes, subject them to grand jury scrutiny or magistrate determination as to obscenity and then subpoena particular titles. *Id.* at 1301. Given the facts before the Court, requiring the government to purchase tapes would not be less intrusive than the course it has pursued.

Because this matter is in the early investigation stage, the government does not yet know which materials, if any, in movant's inventory may be obscene. At oral argument, movant's counsel suggested that the government conduct an undercover investigation to determine which titles to target.[10] It is difficult, however, to see why undercover operations would be less intrusive than investigation through subpoenas. When using the former, the government obtains information by spying on and deceiving unsuspecting targets. In contrast, by using grand jury subpoenas, the government, in essence, comes forthrightly to the recipient's front door. Surely most would agree that this is less intrusive than under-

cover sting operations. As Judge Wilkinson put it,

> A grand jury inquiry may be less intrusive and adversarial than other criminal investigations. Unlike a police investigation, the grand jury does not stake out residences and businesses; procure evidence under false identities and pretenses; search homes, offices or automobiles; or arrest suspects.
>
> In particular, a grand jury subpoena may be a less drastic means of investigating obscenity violations than would purchases by the police. A subpoena remains subject to judicial control.... A subpoena by its terms limits what must be produced, while the only limit on a prosecutor's purchases is the size of his budget. Moreover, a narrowly crafted and openly served subpoena will inhibit the sale and distribution of protected materials far less than a random series of surreptitious purchases by prosecutors and police.

*Id.* at 1304 (citation omitted).

This Court agrees that a subpoena is not necessarily or even usually more intrusive than an undercover investigation. In this case, an order requiring that the subpoenas contain requests for particular titles would substantially hinder the grand jury investigation, but would not result in less infringement on First and Fourth Amendment interests. *See Grand Jury I*, 829 F.2d at 1302 (majority opinion) ("district courts should balance the first and fourth amendment interests at stake against the marginal gain to the issuer of the subpoena in describing the materials by means other than the title of the work"). Accordingly, the Court denies movant's motion to quash the subpoenas on First and Fourth Amendment grounds.[11]

---

ance would be $18,000, 120 hours had already been spent compiling documents and 600 additional hours would be required to comply with subpoenas).

**9.** *See* Fed.R.Crim.P. 17(c); *In re Grand Jury Matters,* 751 F.2d 13, 17–19 (1st Cir.1984).

**10.** An alternative for the government might be to subpoena all films or magazines having sexually suggestive titles based on information obtained from inventory lists. In terms of disrup-

tion to an ongoing distribution business, this is also more intrusive than requesting materials containing specific acts.

**11.** There is a possibility that movant has a list of its inventory together with related advertisements, precis or other descriptive materials. The Court suggested at the hearing that the government may wish to consider issuing a subpoena for these materials. Movant's counsel acknowledged that such materials may well exist and that their production could not be valid-

The Court also declines to quash the subpoenas on Fifth Amendment grounds. Corporations do not enjoy Fifth Amendment protection. *Braswell v. United States,* —— U.S. ——, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Moreover, as the Supreme Court recently emphasized, a custodian of corporate records may not rely on the Fifth Amendment to resist a subpoena for such records, even if the records incriminate him personally. *Id.* Movant has cited no authority for the proposition that a corporate custodian may refuse to produce items in a corporation's inventory because possession of those items might incriminate him individually. *See id.* (custodian produces material in his representative, rather than in his individual, capacity); *In re Grand Jury Subpoena Served Upon Crown Video,* 630 F.Supp. 614, 617–18 (E.D.N.C.1986) (corporate employees have no personal Fifth Amendment right to refuse to produce video tapes). Thus, the Court rejects movant's Fifth Amendment argument.

Accordingly, for the reasons stated in this Order and from the bench, it is hereby ORDERED:

That the motion to quash the subpoenas is denied.

ly resisted. If such summaries exist, and they adequately describe the contents of movant's films and magazines, a less intrusive means of obtaining the materials sought may be to list particular titles based on the information provided in the summaries. It is open to movant to raise this point in the event of contempt proceedings.