Keith BOUSMAN, Plaintiff,

v.

**IOWA DISTRICT COURT FOR CLINTON COUNTY,** Defendant.

No. 99–1548.

Supreme Court of Iowa.

July 5, 2001.

John J. Wolfe of Wolfe Law Office, Clinton, for plaintiff.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Michael E. Wolf, County Attorney, and Gary Strausser, Assistant County Attorney, for defendant.

TERNUS, Justice.

Keith Bousman filed an appeal, which we treat as a petition for writ of certiorari, from a district court decision denying his motion to quash a prior court order directing him to submit to a nontestimonial identification procedure. Bousman claims that the court's order for nontestimonial identification violated his constitutional protection against unreasonable searches and seizures and was issued in contravention of the authorizing statute, Iowa Code chapter 810 (1999). The State contends preliminarily Bousman has no right to appeal this order under Iowa Code section 814.6(1) and discretionary review under section 814.6(2) is inappropriate. The State also asserts that the order for nontestimonial identification did not violate constitutional provisions or chapter 810.

Upon our consideration of the record and the arguments of the parties, we conclude that the present appeal should be treated as a petition for writ of certiorari. Considering the appeal as an original certiorari action, we grant the writ and proceed to the merits. On the merits of Bousman's claim, we hold that the court's order for nontestimonial identification was not supported by "reasonable grounds to suspect" that Bousman committed a felony, as required by Iowa Code section 810.6(2) and the Fourth Amendment. Therefore, we sustain the writ of certiorari and remand for entry of an order quashing the district court's order requiring Bousman to submit to a nontestimonial identification procedure.

## I. Background Facts and Proceedings.

On March 31, 1999, Emily Shaver notified Clinton police that her car had been burglarized. Someone had broken the passenger side window and removed several items from the car. The investigation revealed that two blank checks, moved from their normal position, were stained with blood.

On August 27, 1999, the county attorney's office applied for a nontestimonial identification order directed to Keith Bousman. See Iowa Code ch. 810 (Iowa's nontestimonial identification statute). In the application, the county attorney requested that the court order Bousman to submit to a swabbing of his mouth for a saliva sample to be used for purposes of DNA analysis to aid in the investigation. The county attorney supported this application with an affidavit, signed by an investigating officer.

The district court granted the county attorney's application and issued an order directing Bousman to appear at the Clinton police department to have "oral swabs taken from the mouth." Bousman filed a motion to quash, alleging that the reasons stated for requiring him to submit to the procedure were "inadequate" and violated his right against unreasonable searches and seizures. The district court denied Bousman's motion, finding that the application established reasonable grounds to suspect Bousman "committed or aided and abetted the commission of a felony." Bousman appealed.

## II. Does Bousman Have a Right of Appeal From the District Court's Order Denying His Motion to Quash?

■ The initial issue before this court is whether Bousman had a right to appeal

the district court's ruling on his motion to quash the order for nontestimonial identification. The State contends that the nontestimonial identification order is quasi-criminal in nature and, therefore, the law governing criminal appeals applies. It asserts that Bousman's attempted appeal from the court's ruling on the motion to quash is not a permitted criminal appeal as of right authorized by Iowa Code section 814.6(1). The State argues, in addition, that discretionary review should not be granted. *See* Iowa Code § 814.6(2)(*e*) (allowing discretionary review of "[a]n order raising a question of law important to the judiciary and the profession").

Iowa Code section 814.6 grants "the defendant" a right of appeal from certain specified judgments and the opportunity for discretionary review of other designated orders. Chapter 814 is part of the criminal procedure code. *See* Iowa Code § 801.1 ("Chapters 801 to 819 shall be known and may be cited as the '*Iowa Code of Criminal Procedure.*' "). Therefore, the term "defendant," as used in the context of chapter 814, refers to the "accused" in a criminal case. *Black's Law Dictionary* 429 (7th ed.1999). Although it is possible for a "defendant" to be the subject of a nontestimonial identification order,[1] Bousman does not fall within that class of persons. Bousman has not been accused of or charged with any crime. *See Webster's Third New International Dictionary* 14 (unabr. ed.1993) (defining "accused" as "one charged with an offense; *esp*: the defendant in a criminal case"). He is not and may never be a "defendant." He is merely a suspect. *See id.* at 2303 (defining "suspect" as "one suspected of a crime"). Therefore, section 814.6 does not govern Bousman's right or opportunity to appeal.

■ On the other hand, a proceeding for issuance of a nontestimonial identification order is clearly not civil so as to trigger the rules allowing appeal of final judgments or decisions in civil cases. *See generally* Iowa R.App. P. 1 (providing for appeals in civil cases). Proceedings under chapter 810 can be initiated only by a person who has been arrested for or charged with a criminal offense, *see* Iowa Code § 810.2, or, as in this case, by a prosecuting attorney during the investigation of a criminal offense, *see id.* § 810.3. We agree with the State that such proceedings are quasi-criminal, if not criminal, in nature. *See generally id.* § 801.1 (stating that chapter 810 is part of code of *criminal* procedure); 1981 Iowa Acts ch. 206, §§ 2–15 (described as a bill "concerning certain *criminal* procedures" (emphasis added)) (codified at Iowa Code §§ 810.3–.16 (1983)). Therefore, the rules governing appeals in civil cases do not apply.

■ The fact that this case does not fall within the rules for civil cases or the statute giving criminal defendants the opportunity for appellate review does not mean that Bousman is without a remedy. In *City of Janesville v. McCartney,* 326 N.W.2d 785 (Iowa 1982), we allowed review of a district court ruling by certiorari where neither rule nor statute provided for any other manner of review. *McCartney,* 326 N.W.2d at 786. If the present appeal should have been filed as an original certiorari proceeding, we may consider the appeal "as though the proper form of review had been sought." Iowa R.App. P. 304. Therefore, we will consider Bousman's notice of appeal as a petition for

---

1. Iowa Code section 810.2 allows a "person arrested for or charged with an offense" to request an order for a nontestimonial identification procedure "involving the defendant."

The order issued in this case, however, was requested by the prosecuting attorney investigating the burglary *prior to* Bousman's arrest, as authorized by sections 810.3 and 810.4.

writ of certiorari and proceed to determine whether he is entitled to appellate review on this basis.

■ The supreme court has "constitutional powers to issue writs to, and exercise supervisory and administrative control over, other judicial tribunals." *State v. Davis*, 493 N.W.2d 820, 822 (Iowa 1992). Our rules of appellate procedure contemplate original certiorari proceedings at the appellate level by providing for the filing in our court of a "petition for writ of certiorari directed to the district court." Iowa R.App. P. 301; *see also* Iowa R.App. P. 22(a) (authorizing supreme court to issue writs in furtherance of its "supervisory and administrative control over all inferior judicial tribunals and officers"). Such a petition may be granted or denied. *See* Iowa R.App. P. 302 (stating that petition may be "ruled on in the manner prescribed in the Rules of Appellate Procedure relating to motions"); Iowa R.App. P. 22(f) (giving single justice authority to grant or deny relief sought by motion). *See generally* 14 Am.Jur.2d *Certiorari* § 10, at 634–35 (2000) (stating that review by certiorari is discretionary, unless otherwise provided by rule or statute).

■ "A petition for a writ of certiorari is proper when the district court is alleged to have exceeded its jurisdiction or to have acted illegally." *State Public Defender v. Iowa Dist. Ct.*, 594 N.W.2d 34, 36 (Iowa 1999). We have interpreted this standard liberally, stating that illegality exists when the court's ruling lacks "substantial evidentiary support or when the court has not applied the proper rule of law." *Allen v. Iowa Dist. Ct.*, 582 N.W.2d 506, 508 (Iowa 1998); *see also Sprous v. Iowa Dist. Ct.*, 595 N.W.2d 777, 778 (Iowa 1999) (granting writ of certiorari to review trial court's discretionary ruling on sanctions because the ruling was "judicial in nature"); *State v. Iowa Dist. Ct. for Winneshiek County*, 464 N.W.2d 233, 234 (Iowa 1990) (stating that court would "consider defects and errors in the proceedings of the inferior tribunal which are not strictly jurisdictional in nature" (citation omitted)).

■ The State argues that we should not exercise our discretion to review the case at hand because the order at issue is interlocutory, not final. We note initially that certiorari "is available regardless of the finality of a judgment." *McKeever v. Gerard*, 368 N.W.2d 116, 118 (Iowa 1985). In fact, as we noted in *McKeever*, "certiorari review of court action is ordinarily used prior to final disposition." *Id.* at 119. Therefore, we do not decide whether the nontestimonial identification order at issue here is final or interlocutory. Even if it is interlocutory, a characterization subject to some doubt, that fact would not preclude certiorari review.

■ The function of certiorari is twofold: (1) "the avoidance of unnecessary litigation"; and (2) "the provision of a method of review when no other means are available." *Id.* Although the absence of an opportunity for review in another manner is "[o]ne of the primary criteria" for issuance of a writ of certiorari, *Davis*, 493 N.W.2d at 822, the existence of another method of review does not "foreclose the use of certiorari," *McKeever*, 368 N.W.2d at 119. Certiorari is particularly appropriate " 'where the lower court's jurisdiction or the legality of its acts is challenged on exclusively law or constitutional issues.' " *Id.* (quoting *Steinbeck v. Iowa Dist. Ct.*, 224 N.W.2d 469, 472 (Iowa 1974)).

Turning to the present case, we observe that Bousman will be able to challenge the admission of any evidence gathered as a result of the order in any subsequent criminal proceeding, but only *if* criminal charges are eventually filed against him. More significantly, if this court denies

Bousman's petition for writ of certiorari, subsequent appellate review may still be possible if Bousman is held in contempt for refusing to comply with the order. Although ordinarily a person charged with contempt for violating a court's order may not collaterally attack the order, this rule is not applied "when there was not an adequate and effective remedy to review the challenged ruling, or where compliance could cause irreparable injury which may not be repaired by appellate vindication." *Allen,* 582 N.W.2d at 509. Thus, in *Allen,* where this court had previously denied a party's application for discretionary review of the district court's original order, we held that the party, later held in contempt, could challenge the validity of the underlying order in the appeal of the contempt judgment. *Id.*

In summary, we conclude that Bousman has other avenues for appellate review, but additional litigation would be required first. Since these criteria weigh for and against review at this time, we look to the nature of the issues raised by Bousman. The legality of the district court's order is attacked exclusively on legal and constitutional grounds, which makes certiorari particularly appropriate. *See McKeever,* 368 N.W.2d at 119. Moreover, the issues are important ones of first impression. Based on these factors, we grant the petition for writ of certiorari. We now proceed to a determination of the merits of Bousman's appeal.

### III. *Pertinent Statutory Provisions.*

Before we address the merits of Bousman's challenge to the order requiring him to submit to saliva sampling, it is helpful to review the statutory framework under which this order was issued. Chapter 810 provides an avenue for the county attorney to obtain nontestimonial identification information from a suspect prior to his or her arrest. *See* Iowa Code §§ 810.3, .4. "Nontestimonial identification," as used in chapter 810, refers to such things as "fingerprints, palm prints, footprints, measurements, hair strands, handwriting samples, voice samples, photographs, blood and saliva samples, ultraviolet or blacklight examinations, paraffin tests, and lineups." *Id.* § 810.1.

A district judge or district associate judge may issue a nontestimonial identification order only upon application of a prosecuting attorney who is investigating a felony offense. *See id.* § 810.3. The application for the order must (1) describe the felony being investigated, (2) name or describe the person to be detained for the desired nontestimonial identification procedure, (3) state the time when and place where the procedure will be conducted, and (4) be supported by at least one affidavit "setting forth the facts and circumstances showing that the basis for issuance of an order under this chapter exist." *Id.* § 810.5. If an affidavit is based in any part on hearsay, the affiant must "set forth particular facts bearing on the informant's reliability" and must "disclose, as far as is practicable, the means by which the information was obtained." *Id.* § 810.5(4).

An order for nontestimonial identification may not be issued unless the application and supporting affidavit "establish each of the following":

 1. That there is probable cause to believe that a felony described in the application has been committed.

 2. *That there are reasonable grounds to suspect that the person named or described in the application committed the felony* and it is reasonable in view of the seriousness of the offense to subject that person to the requested nontestimonial identification procedures.

3. That the results of the requested nontestimonial identification procedures will be of material aid in determining whether the person named or described in the application committed the felony.

4. That such evidence cannot practicably be obtained from other sources.

*Id.* § 810.6 (emphasis added). It is the "reasonable grounds to suspect" element that gives rise to Bousman's claim that the order in this case is constitutionally and statutorily infirm.

### IV. *Was the Order for Nontestimonial Identification Properly Issued?*

 A. *Scope of review.* We review a district court's refusal to quash a discovery order for an abuse of discretion. *See Portz v. Iowa Bd. of Med. Exam'rs,* 563 N.W.2d 592, 592 (Iowa 1997) (setting forth standard for review of refusal to quash agency subpoena). An abuse of discretion occurs when "the court exercise[s] [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee,* 573 N.W.2d 1, 5 (Iowa 1997). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000). In other words, a court has no discretion to issue a discovery order that lacks factual support or is in contravention of governing constitutional or statutory provisions.

 Here, Bousman claims that the court's refusal to quash its prior order rests on an erroneous application of constitutional and statutory law. Our review of Bousman's constitutional claim is de novo. *See State v. Myers,* 570 N.W.2d 70, 72 (Iowa 1997). In this review, we "evaluate the totality of the circumstances as shown by the entire record." *Id.* Our review of the statutory sufficiency of the order is for correction of errors at law. *See id.*

 B. *Was a finding of probable cause necessary to support issuance of the nontestimonial identification order?* Bousman argues that the order requiring him to appear for DNA sampling violated his constitutional protection against unreasonable searches and seizures. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures[ ] shall not be violated. . . ."); Iowa Const. art. I, § 8 (same).[2] He contends that the order was not supported by *probable cause* to believe that he committed the burglary under investigation.

 Before we decide whether the Fourth Amendment requires probable cause under the circumstances before us, we address Bousman's argument that chapter 810 itself requires that the order be based on probable cause. Section 810.6(2) requires a showing of "reasonable grounds to suspect that the person named or described in the application committed the felony." Iowa Code § 810.6(2). It is well established in the area of Fourth Amendment jurisprudence that "reasonable grounds to suspect" is something less than probable cause. *See Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968); *State v. Cline,* 617 N.W.2d 277, 282 (Iowa 2000). Probable cause requires "reasonable ground[s] for *belief*" that the person to be arrested has committed a crime. *State v. Harris,* 490 N.W.2d 561, 563 (Iowa 1992) (emphasis added) (holding that probable cause is something more than "mere suspicion");

**2.** Our discussion of the Fourth Amendment applies equally to Bousman's claim under the

Iowa Constitution.

*accord State v. Ceron,* 573 N.W.2d 587, 592 (Iowa 1997). "Reasonable grounds to suspect," on the other hand, merely requires that there be a reasonable basis to think that the suspect "may be involved" in the illegal activity. *Cline,* 617 N.W.2d at 283 (emphasis omitted). This standard is "essentially identical to that established in *Terry v. Ohio." In re Nontestimonial Identification Order Directed to R.H.,* 762 A.2d 1239, 1242 (Vt.2000); *see also State v. Farrell,* 242 N.W.2d 327, 329 (Iowa 1976) (characterizing *Terry* standard as "reasonable grounds to suspect"). We conclude, therefore, that the "reasonable grounds to suspect" language in section 810.6(2) does not require a showing of probable cause. *Cf. In re Nontestimonial Identification Order,* 762 A.2d at 1244 (interpreting identical language in Vermont statute as not requiring probable cause). We now consider whether the Constitution requires such a showing.

▮ "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607, 614 (1975). Even temporary intrusions into one's personal security for investigatory purposes must meet the Fourth Amendment reasonableness requirement. *See Davis v. Mississippi,* 394 U.S. 721, 726, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676, 680–81 (1969); *Terry,* 392 U.S. at 19, 88 S.Ct. at 1878–79, 20 L.Ed.2d at 904. Thus, in *Davis,* the United States Supreme Court held that "[d]etentions for the sole purpose of obtaining fingerprints are ... subject to the constraints of the Fourth Amendment." 394 U.S. at 727, 89 S.Ct. at 1397, 22 L.Ed.2d at 681. We think the saliva sampling at issue here, like the fingerprinting in *Davis,* must meet the constitutional requirement of reasonableness.

▮ Having concluded that investigatory detentions for identification purposes must be reasonable, we face a more problematic issue: whether such a detention is reasonable only when supported by probable cause, as Bousman contends. Reasonableness "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brignoni–Ponce,* 422 U.S. at 878, 95 S.Ct. at 2579, 45 L.Ed.2d at 614–15.

The search and seizure challenged in *Davis*—the fingerprinting of a suspect during the course of a criminal investigation—is similar to the detention at issue here. Although the Court in *Davis* was not required to determine whether a fingerprinting procedure could be conducted upon a finding of something less than probable cause, 394 U.S. at 728, 89 S.Ct. at 1398, 22 L.Ed.2d at 681, the Court made the following observations with respect to this issue.

It is arguable, however, that, because of the unique nature of the fingerprinting process, such detentions might, under narrowly defined circumstances, be found to comply with the Fourth Amendment even though there is no probable cause in the traditional sense. Detention for fingerprinting may constitute a much less serious intrusion upon personal security than other types of police searches and detentions. Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search. Nor can fingerprint detention be employed repeatedly to harass an individual, since the police need only one set of each person's prints. Furthermore, fingerprinting is an inherently more reliable and effective crime-solving tool than eyewitness identifications or confessions and is not subject to such

abuses as the improper line-up and the "third degree." Finally, because there is no danger of destruction of fingerprints, the limited detention need not come unexpectedly or at an inconvenient time. For this same reason, the general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context.

*Id.* at 727–28, 89 S.Ct. at 1397–98, 22 L.Ed.2d at 681 (citations omitted).

Based on this dictum, several states, including Iowa, enacted statutes allowing for investigatory detentions to obtain identifying information from a suspect based on less than probable cause. *See, e.g., State v. Evans,* 215 Neb. 433, 437, 338 N.W.2d 788, 792 (1983); *In re Nontestimonial Identification Order,* 762 A.2d at 1245; Idaho Code § 19–625(1)(B) (2000); Iowa Code § 810.6. *See generally* 4 Wayne R. LaFave, *Search and Seizure* § 9.7(b), at 325 (1996) (noting that *Davis* dictum prompted some states to enact statutes or rules "which authorize brief detention at the [police] station on less than the grounds needed for arrest, where the purpose of the detention is to conduct certain identification procedures") [hereinafter *Search and Seizure* ]. Some of these statutes, like Iowa's, allow issuance of a nontestimonial identification order based upon reasonable grounds to suspect that the person subject to the order has committed the crime under investigation. *E.g., State v. Rodriguez,* 186 Ariz. 240, 248, 921 P.2d 643, 651 (1996); *People v. Madson,* 638 P.2d 18, 32 (Colo.1981); *State v. Welch,* 316 N.C. 578, 583, 342 S.E.2d 789, 792 (1986); *In re Nontestimonial Identification Order,* 762 A.2d at 1240–41.

We do not think the order challenged by Bousman violated his constitutional rights solely because it was issued under a standard of reasonable grounds to suspect rather than probable cause. As noted earlier, the United States Supreme Court has suggested that probable cause is not required when the detention is temporary and brief, is a relatively slight intrusion into the person's privacy, does not involve the exploration of an individual's private life or thoughts, need not be employed repeatedly, is a reliable and effective investigative tool so as not to be subject to abuse, and need not be done unexpectedly or at an inconvenient time. *See Davis,* 394 U.S. at 727–28, 89 S.Ct. at 1397–98, 22 L.Ed.2d at 681. We think the compulsory presence of a citizen at the police station for swabbing of that person's saliva is such a detention. The identification procedure is short, needs to be done only once, does not invade the person's private life or thoughts, and can be scheduled in advance for a convenient time. Undeniably, DNA testing has proven to be a valid and useful crime-solving tool. Moreover, we do not think saliva sampling involves a significant intrusion into a person's bodily security. *See In re Nontestimonial Identification Order,* 762 A.2d at 1244. Finally, the order was issued upon the authorization of a judicial officer, as suggested in *Davis. See Davis,* 394 U.S. at 728, 89 S.Ct. at 1398, 22 L.Ed.2d at 681. For these reasons, we believe the nontestimonial identification order at issue here could be constitutionally based upon a finding of reasonable grounds to suspect rather than upon a showing of probable cause. *See Madson,* 638 P.2d at 32 (holding that statute allowing issuance of detention order based on "reasonable grounds, not amounting to probable cause to arrest, to suspect the person described in the affidavit committed the offense" did not violate the Fourth Amendment); *In re Nontestimonial Identification Order,* 762 A.2d at 1244, 1246–47 (holding that issuance of detention order for purpose of saliva sampling based on

reasonable suspicion comports with Vermont and United States Constitutions); *see also State v. Hall,* 93 N.J. 552, 563, 461 A.2d 1155, 1161 (1983) (holding that "identification procedures that are comparable to fingerprinting will be sustainable upon a showing of less than traditional probable cause"). *See generally* 4 *Search and Seizure* § 9.7(b), at 332 (stating that "a lesser degree of suspicion" than probable cause will support a nontestimonial identification order); Angus J. Dodson, Comment, *DNA "Line–Ups" Based on a Reasonable Suspicion Standard,* 71 U. Colo. L.Rev. 221, 253–54 (2000) (arguing that DNA sampling and profiling are "closely analogous to fingerprinting" and should be permitted under *Davis* standard).

■ C. *Was the order supported by reasonable grounds to suspect that Bousman committed the burglary?* Bousman also claims that there was no basis in the record before the district court upon which to find reasonable grounds to suspect that Bousman committed the burglary under investigation. As noted above, section 810.6(2) authorizes a nontestimonial identification order "only if the court finds that the application and the affidavit or affidavits in support of the application establish ... reasonable grounds to suspect that the person named or described in the application committed the felony." Iowa Code § 810.6(2).

The application filed by the county attorney in this case stated that the charge under investigation was a felony—third-degree burglary. The application provided no information linking Bousman to this offense, but it was supported by the following affidavit signed by the investigating officer.

On March 31, 1999, Emily Shaver reported to the Clinton Police Department that her Chevy Cavalier which was parked in the parking lot across from the Odeon Club, 80 Main Ave., Clinton, was forcibly entered by someone breaking the passenger side window and several items were taken from within.

Of the several items disturbed within the vehicle, two blank personal checks of Shavers [sic] were observed with what appears to be blood stains upon them. Ms. Shaver states that the checks were not in their normal position within the vehicle and that they did not previously contain a blood stain.

*A witness observed a white female standing next to the Shaver vehicle and when she noticed the witness observing her, she ran to a parked vehicle, entered the passenger side and the vehicle left the parking lot through a yard. The witness observed that the vehicle was bearing Iowa license number 183FRT which is registered to Keith Bousman. The witness was also shown a photo array consisting of six photographs. Of the six photographs, the witness chose photograph labeled #10308, that of Keith A. Bousman.*

The blood stain on the checks within the victim['s] vehicle indicates that the person who committed the burglary may have injured themselves in the process of breaking the window. A DNA comparison of Bousman['s] blood with that of the blood stain from within the vehicle would indicate Bousman['s] involvement.

(Emphasis added.)

Bousman's chief complaint about the showing made by the county attorney centers on the information provided by the unidentified "witness." Bousman points out that neither the application nor the affidavit provided information from which the judge could assess the informant's credibility. Contrary to the express requirements of section 810.5(4) pertaining to hearsay evidence, the affidavit did not "set forth particular facts bearing on the

informant's reliability," nor did it disclose "the means by which the information was obtained." Iowa Code § 810.5(4). Absent the facts required by section 810.5(4), the court here simply had no basis to assess the credibility or reliability of the witness, who was the only source of information connecting Bousman to the commission of the burglary.

The State contends, however, that this omission is not significant because the informant was simply a "citizen" who had inherent reliability. *See State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990) (holding that there is a rebuttable presumption that "information imparted by a citizen informant is generally reliable"). "A citizen informant is ordinarily defined as a person who is a witness to or a victim of a crime." *Id.* We note initially that the individual providing information to the investigating officer in this case was unnamed and otherwise unidentified. We question whether an unnamed, unidentified person can ever be considered a citizen informant. *See generally State v. Weir*, 414 N.W.2d 327, 331 (Iowa 1987) (distinguishing between a confidential informant and an informant "named" in a search warrant application and supporting affidavits). In addition, it would be sheer supposition to conclude based on the affidavit here that the informant was a mere citizen. Nothing in the affidavit indicates that the witness saw the crime or was a victim of it. There are simply no facts in the affidavit that would have informed the court whether the witness was, in fact, a disinterested citizen, or was someone with a grudge against Bousman or someone who provided the information in exchange for some concession on charges pending against the informant.

The question that now arises is what effect the State's failure to comply with section 810.5(4) has on the nontestimonial identification order. We think the omission of any facts from which the court could assess the informant's credibility and the reliability of the informant's information precluded issuance of the order for statutory and constitutional reasons.

The statutory requirement that the affidavit "*shall* set forth particular facts bearing on the informant's reliability" and "the means by which the information was obtained" is mandatory. Iowa Code § 810.5(4); *see State v. Iowa Dist. Ct. for Black Hawk County*, 472 N.W.2d 621, 624 (Iowa 1991) (holding that use of the word "shall" in search warrant statute imposed a duty that was "obligatory, not optional"). This requirement ensures that a nontestimonial identification order is "issued only upon reliable information." *Myers*, 570 N.W.2d at 73 (discussing "statutory test of confidential informant credibility" with respect to search warrants). Because the application and affidavit submitted in the present case lacked the information required by section 810.5(4) with respect to the informant's credibility and reliability, the facts provided by the informant should not have been considered in assessing the adequacy of the showing made for issuance of the nontestimonial identification order. *Cf. Iowa Dist. Ct. for Black Hawk County*, 472 N.W.2d at 625 (holding that noncompliance with mandatory requirement of search warrant statute designed to ensure that warrants are issued upon reliable information required that information provided by informants be ignored in determining probable cause). Since the informant was the only source of information connecting Bousman to the burglary, the affidavit did not provide a sufficient basis for the district court to find reasonable grounds to suspect Bousman of committing this crime.

Issuance of the order in the absence of reasonable grounds violated both chapter 810 and the Fourth Amendment. The dis-

trict court erred in failing to quash the order on this basis.

## V. *Summary and Disposition.*

■ A nontestimonial identification order issued pursuant to chapter 810 must be constitutionally reasonable. This requirement means that the order must be supported by reasonable grounds to suspect that the subject of the order committed the crime under investigation. Probable cause to believe that the subject of the order actually committed the crime is not necessary.

The evidentiary showing in support of the order issued in this case was deficient because it did not include the information required by section 810.5(4) with respect to the unnamed informant. As a consequence, the court should not have considered the information provided by the informant. In the absence of this information, there were insufficient facts to support a finding of reasonable grounds to suspect that Bousman committed the burglary being investigated, as required by chapter 810 and the Fourth Amendment.

Because the order was improperly issued, the district court abused its discretion in failing to grant Bousman's motion to quash. Therefore, we sustain the writ of certiorari and remand the case for entry of an order granting Bousman's motion to quash.

**WRIT SUSTAINED; CASE REMANDED.**

All justices concur except LARSON, J., who dissents.

LARSON, Justice (dissenting).

I dissent because the majority applies certiorari as a vehicle to consider a claim that could not be considered as an application for discretionary review. In so doing, it encourages an end run on our long-established rules regarding review of preliminary rulings in criminal cases.

It is true this plaintiff was not under arrest, but this is all the more reason to deny review at this time. The district court's ruling is so preliminary that many subsequent events could make the order moot. For example, he might not even be arrested. He might not be charged, and if charged, he might not be convicted. If convicted, he can appeal, and the issue could be considered at that time. For this reason, certiorari, which is discretionary on our part, should be denied.