**PATTISON BROTHERS MISSISSIPPI RIVER TERMINAL, INC.,**
Plaintiff,

v.

**IOWA DISTRICT COURT FOR CLAYTON COUNTY,**
Defendant.

No. 99–0553.

Supreme Court of Iowa.

July 5, 2001.

John W. Holmes of Holmes & Holmes, Waterloo, for plaintiff.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and Kevin C. Clefisch, County Attorney, for defendant.

CADY, Justice.

This case requires us to determine whether the district court properly refused to quash a county attorney's subpoena issued under Iowa Rule of Criminal Procedure 5(6). We consider the appeal as a petition for writ of certiorari and conclude the motion to quash was properly overruled by the district court.

## I. Background Facts and Proceedings.

Pattison Brothers Mississippi River Terminal, Inc. (Pattison) operates two grain terminals on the Mississippi River in Clayton County, Iowa. Grain is delivered to the terminals by truck, and is then shipped by barge or train to other locations.

The trucks which deliver the grain to the terminals are weighed by Pattison both before the grain is unloaded and after. After delivery is made, Pattison gives the truck driver a scale ticket listing the quantity and grade of the grain delivered. The truck drivers who deliver grain to the terminal usually do not own the grain but are hired by the owner to deliver it to the terminal. Consequently, Pattison gives each driver additional copies of the scale ticket for the employer of the driver and the owner of the grain. Pattison keeps the original copy of the scale ticket for its records.

Each scale ticket is issued in the name of the owner of the grain. It does not identify the driver of the truck unless more than one driver delivers grain for the same owner. When that occurs, Pattison places the first name of the driver on the ticket. Additionally, the scale ticket does not identify the type of vehicle driven by the customer or the vehicle identification number. Truck drivers do not sign the scale tickets.

On December 18, 1998, the Clayton County attorney issued a subpoena duces tecum to Pattison, commanding its officers, employees, or agents to testify in a criminal proceeding against Keith D. Knox, Lee Alan Berns, and Donald John Baade. The subpoena also directed Pattison to produce any "load receipts and weights related to and involved with" the three men for the year 1998. The three men were truck drivers who regularly delivered grain to Pattison's terminals. All three drivers had previously been charged with violations of Iowa's legal weight limits for trucks.

Pattison filed a motion to quash the subpoena with the district court. Donald, Lee, and Keith joined Pattison's motion.

At the hearing before the district court, the county attorney explained his purpose in filing the subpoena. Curt Reinhardt, an Iowa Department of Transportation (DOT) enforcement officer, informed the county attorney that he believed the three truck drivers had been engaging in consistent flagrant weight limit violations while hauling grain to the Pattison terminals. Reinhardt suggested the county attorney subpoena the terminal's records. When the county attorney issued the subpoena, he intended to accommodate Pattison in the production of the records by having Reinhardt assist Pattison's employees in locating the applicable documents. The investigation by the county attorney was limited to Donald, Lee, and Keith, and the subpoena only sought records that would indicate weight limit violations of 3000 pounds or greater.

Pattison raised two objections to the subpoena. It argued that the county at-

torney did not have the authority to obtain Pattison's private scale tickets for the purpose of detecting violations of the weight limit laws. It also argued that it could not reasonably comply with the subpoena because the scale tickets it kept did not contain the drivers' last names and often did not contain any identification of the drivers. Pattison believed it could not readily determine what tickets conformed with the mandates of the subpoena.

The district court denied the motion to quash and Pattison filed an appeal to this court. Pattison argues the county attorney was without authority to issue the subpoena and that Pattison cannot reasonably comply with the subpoena. The State asserts that the denial of the motion to quash is not a final order and Pattison has no right to appeal. Alternatively, the State argues the district court properly denied the motion.

## II. Jurisdiction.

We must first determine our jurisdiction to consider this case. Iowa Rule of Criminal Procedure 5(6) authorizes the issuance of a county attorney's subpoena and subpoena duces tecum in an investigation by the county attorney of a criminal offense. However, there is no specific rule or statute permitting a subpoenaed witness who moves to quash the subpoena or subpoena duces tecum to appeal the denial of the motion by the district court when the witness is not a defendant in the criminal proceeding.

In *Bousman v. Iowa District Court*, 630 N.W.2d 789 (Iowa 2001), decided on this date, we found this same lack of a procedural mechanism for appeal by a person subject to a nontestimonial identification order under Iowa Code chapter 810 limited judicial review to a petition for writ of certiorari under Iowa Rule of Appellate Procedure 301. *See Bousman*, 630

N.W.2d at 794. Not only is this form of review available under our rules prior to the final disposition of the case, it is less disruptive to the ongoing criminal investigation by the county attorney than an appeal, and gives us more control over our dockets. *See McKeever v. Gerard*, 368 N.W.2d 116, 118 (Iowa 1985) ("available regardless of the finality of a judgment"). It is the proper mechanism for review of an order by the district court denying a motion to quash a county attorney's subpoena. Thus, when an appeal should have been filed as a certiorari proceeding, we are authorized to proceed to consider the appeal as though it was properly filed as a certiorari action. Iowa R.App.P. 304.

We recognize that a writ of certiorari is proper when the plaintiff alleges the district court exceeded its jurisdiction or acted illegally. *State Pub. Defender v. Iowa Dist. Ct.*, 594 N.W.2d 34, 36 (Iowa 1999). An illegal act exists when the challenged court order lacks substantial support in the evidence or is not supported by the proper rule of law. *Allen v. Iowa Dist. Ct.*, 582 N.W.2d 506, 508 (Iowa 1998).

In *Bousman*, we found that certiorari was proper because the other avenues for appellate review required predicate litigation. Without certiorari, Bousman could obtain judicial review only if criminal charges were ultimately filed against him or if he appealed from a contempt order for failing to comply with the nontestimonial identification order. We also observed that Bousman challenged the order on legal and constitutional grounds.

Similarly, Pattison has no practical means of judicial review without certiorari. It is not the subject of a potential criminal action. Thus, judicial review would be limited to an appeal from a contempt citation. *See Church of Scientology of California v. United States*, 506 U.S. 9,

18 n. 11, 113 S.Ct. 447, 452 n. 11, 121 L.Ed.2d 313, 322–23 n. 11 (1992); *Allen,* 582 N.W.2d at 508–09. Yet, an appeal of a discovery order through a challenge to a contempt proceeding is impractical for a litigant who is a disinterested third party to the underlying dispute and lacks a sufficient stake in the outcome of the underlying case to risk contempt. *See Church of Scientology of California,* 506 U.S. at 18 n. 11, 113 S.Ct. at 452 n. 11, 121 L.Ed.2d at 322–23 n. 11; *In re Pruett,* 133 F.3d 275, 281 n. 10 (4th Cir.1997). Thus, potentially harsh and unfair results await a disinterested third party who challenges a discovery order through a contempt proceeding. This type of risky review for a disinterested third party supports review by writ of original certiorari. *See Shannon by Shannon v. Hansen,* 469 N.W.2d 412, 414 (Iowa 1991) (review of refusal to grant protective order to state patrol was by certiorari because state patrol was not a party to the underlying action). Additionally, the grounds for review raised by Pattison are framed in terms of a Fourth Amendment challenge. This also makes the case particularly appropriate for certiorari review. *See McKeever,* 368 N.W.2d at 118. Accordingly, we grant the petition for writ of certiorari and proceed to consider the merits of the challenge to the subpoena duces tecum.

 Our review is at law. *See Matlock v. Weets,* 531 N.W.2d 118, 121 (Iowa 1995). A district court is given discretion to refuse to quash a subpoena. *Exotica Botanicals, Inc. v. Terra Int'l, Inc.,* 612 N.W.2d 801, 804 (Iowa 2000). Reversal is warranted only if the grounds relied on by the district court are clearly unreasonable or untenable. *Id.*

### III. Reasonable Compliance.

 One common ground raised in motions to quash is that the subpoena violates the protections afforded the subjected individual by the Fourth Amendment. Courts employ a three-prong test in determining whether a subpoena satisfies the Fourth Amendment doctrine:

> (1) the investigation must be for a lawfully authorized purpose although no specific crime need be charged; (2) the documents sought must be relevant to the inquiry; and (3) the items to be produced must be described in a manner permitting the object of the subpoena to properly respond with reasonable effort.

*State v. Kelley,* 353 N.W.2d 845, 847 (Iowa 1984) (citation omitted); *see Oklahoma Press Publ'g Co. v. Walling,* 327 U.S. 186, 208–09, 66 S.Ct. 494, 505–06, 90 L.Ed. 614, 629–30 (1946); 2 Wayne R. LaFave, *Search and Seizure* § 4.13(a), at 726–27 (3d ed.1996) [hereinafter LaFave]. Courts must consider subpoenas which are attacked on Fourth Amendment grounds on a case-by-case basis. *In re Grand Jury Subpoena Duces Tecum,* 834 F.2d 1128, 1133 (2d Cir.1987); *see* 2 LaFave § 4.13(a), at 727 (court must examine the particular circumstances of the case in determining whether the Fourth Amendment has been violated). Thus, we will examine each prong of the test to determine if the subpoena in this case complies with the Fourth Amendment protections.

### A. Lawful Purpose.

 Courts rarely, if ever, quash a subpoena on the grounds that it was issued for an unlawful purpose. *See* 2 LaFave § 4.13(a), at 728 ("the Fourth Amendment requirement of an authorized investigative purpose is a virtual nullity"). This is because the lawful purpose criterion is satisfied when the county attorney is engaged in a bona fide criminal investigation. *Kelley,* 353 N.W.2d at 848. The county attorney in this case was involved in a lawful criminal investigation. The three named

truck drivers had been previously charged with flagrant overweight violations, and they were suspected of committing this same offense on other occasions. To substantiate his suspicions, the county attorney chose to subpoena the records from the business where the three drivers regularly delivered grain. In issuing the subpoena to Pattison, the county attorney was merely exercising his general investigatory powers. *See Kelley,* 353 N.W.2d at 848; *Chidester v. Needles,* 353 N.W.2d 849, 852 (Iowa 1984).

Pattison attempts to refute the lawfulness of the investigation by arguing the DOT is not authorized under Iowa Code section 321.465 and section 321.476 (1997) to obtain Pattison's scale tickets because Pattison did not consent to the use of its private scales and records. We need not address Pattison's argument concerning the authority of the DOT. The county attorney may investigate any crime, whether or not an agency such as the DOT would be so empowered.

### B. Relevancy.

The documents sought from Pattison by the county attorney were clearly relevant to the investigation. *See Oklahoma Press Publ'g Co.,* 327 U.S. at 209, 66 S.Ct. at 506, 90 L.Ed. at 630; *Kelley,* 353 N.W.2d at 848. Trucks delivering loads to Pattison's terminals are weighed both before and after the loads are emptied. The scale tickets issued to the customers list the quantity of the grain delivered. By examining these documents, the county attorney may be able to determine whether the truck drivers were hauling grain in excess of the legal weight limits. If the scale tickets show weight limit violations, the county attorney can use the tickets as a basis for pursuing criminal proceedings against the guilty drivers. The subpoena satisfies the relevancy requirement.

### C. Description of Items.

 To comply with the third requirement of particularity, the subpoena must adequately describe the documents to be produced to permit the object of the subpoena to adequately respond. *Oklahoma Press Publ'g Co.,* 327 U.S. at 209, 66 S.Ct. at 506, 90 L.Ed. at 630; *Kelley,* 353 N.W.2d at 849. The description must be sufficiently specific so that the person can determine what documents are sought under the subpoena. 2 LaFave § 4.13(d), at 737. Yet, the subpoena need not describe with exact detail the specific documents to be produced. *Oklahoma Press Publ'g Co.,* 327 U.S. at 209, 66 S.Ct. at 506, 90 L.Ed. at 630; *In re Tax Liabilities,* 866 F.2d 1015, 1020–21 (8th Cir.1989); *see In re Grand Jury Subpoena,* 630 F.Supp. 614, 620 (D.N.C.1986); 2 LaFave § 4.13(d), at 737. On the other hand, the subpoena must not be so broad that compliance would be unduly burdensome. 2 LaFave § 4.13(d), at 737. We recognize that questions regarding adequacy of the specificity of the subpoena vary "in relation to the nature, purposes and scope of the inquiry." *Oklahoma Press Publ'g Co.,* 327 U.S. at 209, 66 S.Ct. at 506, 90 L.Ed. at 630.

Our review of the subpoena in this case reveals the description of the items sought is clear and specific. The subpoena seeks the load and weight records of three specific individuals. The problem in producing the records is not actually due to the description contained in the subpoena, but to the manner in which Pattison maintains its records. Pattison does not normally identify scale tickets by the name of the driver, and when the driver's name is listed, the scale ticket only refers to the first name of the driver. Thus, the record keeping procedure of Pattison, not the description contained in the subpoena, makes it

difficult for Pattison to comply with the subpoena.

 Notwithstanding, it is appropriate to consider the willingness of the county attorney to assist the subject of the subpoena in complying with the subpoena when determining the particularity of the description of the document sought. *See In re Subpoenas Duces Tecum,* 51 F.Supp.2d 726, 737 (D.Va.1999) (United States Attorney "offered a compromise schedule for production of the requested documents"); *see also* 2 LaFave § 4.13(e), at 749 (ordering investigative body to inspect subpoenaed documents on its own would minimize burden of compliance). Based on the hearing on the motion to quash the subpoena in this case, it is clear the county attorney desires to work with Pattison in locating the requested documents and is willing to provide assistance in searching through the records. Moreover, it appears the description contained in the subpoena could be modified to accommodate Pattison's record keeping practices if it chose not to accept the county attorney's assistance. Additionally, it is apparent that other agreements could be fashioned. *See Dir. of the Office of Thrift Supervision v. Ernst & Young,* 786 F.Supp. 46, 52 (D.D.C.1992).

## IV. Conclusion.

Considering the willingness of the county attorney to assist Pattison in complying with the subpoena, we conclude the subpoena sufficiently described the objects to be produced and the district court acted properly in denying the motion to vacate. We annul the writ of certiorari and affirm the decision of the district court.

**WRIT ANNULLED.**