# IN THE SUPREME COURT OF IOWA

No. 06–1368

Filed October 9, 2009

**IN THE MATTER OF THE COLLEGE COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS' CONSIDERATION OF THE RECOMMENDED TERMINATION OF THE TEACHING CONTRACT OF JOHN GIANFORTE.**

**JOHN GIANFORTE,**

Appellee,

vs.

**RICHARD WHITEHEAD**
and **COLLEGE COMMUNITY SCHOOL DISTRICT,**

Appellants.

---

Appeal from the Iowa District Court for Linn County, Amanda P. Potterfield, Judge.

School district and superintendent appeal from district court order entered in response to report of noncompliance with subpoenas in a teacher-termination proceeding. **REVERSED AND REMANDED.**

Donald C. Hoskins, Marion, for appellant College Community School District.

Brian L. Gruhn of Gruhn Law Firm, Cedar Rapids, for appellant Richard Whitehead.

Douglas R. Oelschlaeger and Sarah J. Gayer of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee John Gianforte.

David W. Nelmark of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for amicus curiae Iowa Association of School Boards.

**CADY, Justice.**

In this appeal from a district court order issued in response to a report by a school board of noncompliance by witnesses with subpoenas issued by the board in a teacher-termination proceeding, we are presented with two issues of prehearing discovery. First, we consider the use of a *subpoena duces tecum* by a teacher to obtain documents from the superintendent of the school district. Second, we consider whether the district court may order school board members to answer interrogatories propounded by the teacher to inquire into claims of prejudice and bias. On our review, we reverse the decision of the district court and remand the case for further proceedings before the school board.

## I. Background Facts and Proceedings.

John Gianforte was a special education teacher employed by the College Community School District in Cedar Rapids. He taught at Prairie High School and was the head coach of the boys' basketball team. Richard Whitehead is the superintendent of the district.

On April 17, 2006, Gianforte was notified by Whitehead that he was making a recommendation to the College Community School District that his teaching contract be terminated. The written notice provided eight reasons for termination, including poor performance and inappropriate conduct as a teacher. The reasons did not relate to his performance as a coach. In addition to the notice, Whitehead provided Gianforte with a detailed written memorandum prepared by the high school principal describing the claims of poor teaching performance and unprofessional conduct. Among other things, the memorandum described claims that Gianforte did not maintain an appropriate grading system, made improper statements to students, and failed to properly

develop and implement individual education plans for his special education students. Whitehead also provided Gianforte with a lengthy written evaluation prepared by an associate principal describing the problems and concerns with Gianforte's teaching performance. The evaluation essentially described the teaching performance of Gianforte as measured against the Iowa teaching standards. The termination was to be effective at the end of the school year.

Gianforte responded to the notice and recommendation by requesting a private hearing before the school board. The hearing was set for May 10, 2006, but was continued on two occasions at Gianforte's request to Tuesday, June 6, 2006. Gianforte and Whitehead were at all relevant times represented by counsel.

On June 1, Whitehead furnished Gianforte the documentation he intended to present to the school board at the hearing, as well as a list of persons who would address the board in support of the recommendation to terminate Gianforte. On June 2, Gianforte requested the board issue a subpoena to Whitehead directing him to produce a host of documents identified by seventy-five separate categories. He also requested the board issue subpoenas for fifty-seven witnesses, including each member of the school board, to appear at the hearing.

In the afternoon of June 5, Gianforte furnished Whitehead with the documents he expected to present at the hearing and his list of witnesses. He also requested that Whitehead produce the documents subject to the subpoena he had requested from the board. Gianforte informed Whitehead the documents requested in the subpoena would be included as documents he expected to present at the hearing. The president of the school board issued the subpoenas and the *subpoena duces tecum* on June 6.

Whitehead objected to the *subpoena duces tecum* and to the method used by Gianforte to provide the documentation he expected to use at the hearing. The school board also objected to the subpoena of its members. As a result, the hearing was continued, and the matter was submitted to the district court without evidence offered by either party.

Many of the requests for documents described in the subpoena sought documentation dating back five or ten years and included such general subjects as "all documentation concerning the charges," as well as specific subjects such as lists and records of former students and all individual educational plans prepared by other teachers. Whitehead claimed most of the documents were not relevant to the grounds for termination. He also claimed that compliance with the *subpoena duces tecum* would require him to examine thousands, if not tens of thousands, of documents. The district court directed Whitehead to produce fifty-two of the seventy-five requests for documents. Essentially, the district court only quashed the *subpoena duces tecum* relating to the requests for documents concerning Gianforte's performance as a basketball coach.

The district court also quashed the subpoenas directed to the members of the board. Notwithstanding, the district court subsequently directed the board members to submit an answer to an interrogatory from Gianforte relating to any prior contacts and communications they had concerning Gianforte's teaching.

Whitehead and the board appealed the decision of the district court. The appeals were consolidated. Gianforte was suspended with pay pending the outcome of the termination proceeding and is not currently teaching at the high school.

Whitehead claims on appeal the district court abused its discretion by enforcing the *subpoena duces tecum* served on him the day of the

scheduled hearing. He claims the *subpoena duces tecum* was untimely under the statutory scheme governing termination hearings. He also asserts the *subpoena duces tecum* was untimely because he did not have a reasonable time to comply with the production of documents. Finally, he claims the *subpoena duces tecum* was unduly burdensome. The board asserts the district court had no authority to subject its members to any form of discovery through the use of interrogatories.

## II.  Standard of Review.

The district court intervenes in a teacher-termination proceeding only to decide questions pertaining to the refusal of witnesses to comply with a subpoena. Iowa Code § 279.16(3) (2005). Normally, the district court is given discretion when deciding disputes that arise over the issuance of administrative subpoenas. *See State ex rel. Miller v. Publishers Clearing House, Inc.*, 633 N.W.2d 732, 736 (Iowa 2001); *Portz v. Iowa Bd. of Med. Exam'rs*, 563 N.W.2d 592, 592 (Iowa 1997); *see also Bousman v. Iowa Dist. Ct.*, 630 N.W.2d 789, 796 (Iowa 2001). Accordingly, as a discovery proceeding legally before the district court, we review the decision reached for an abuse of discretion.

> An abuse of discretion occurs when "the court exercise[s] [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). In other words, a court has no discretion to issue a discovery order that lacks factual support or is in contravention of governing constitutional or statutory provisions.

*Bousman*, 630 N.W.2d at 796.

## III.  Overview of Statutory Termination Procedure.

Public school teachers in Iowa work during a school year under a written contract of employment with the board of directors of the school

district. Iowa Code § 279.13(1). The term of the contract can cover the school year and is automatically renewed for subsequent school years, except when altered by mutual agreement or terminated by the board. *See id.* § 279.13(2). The termination of a contract by the board is governed by rules and regulations established by the legislature in chapter 279 of the Code. Generally, the process requires the superintendent of the school district, or a designee, to give the teacher written notice no later than April 30 of the school year that the superintendent will recommend to the school board at its next meeting, held no later than May 15, that the teacher's contract be terminated at the end of the current school year. *Id.* § 279.15(1). The termination notification and recommendation must contain "a short and plain statement of the reasons" to support just cause for the recommendation. *Id.* § 279.15(2).

Within five days after receipt of the notice, the teacher is permitted to request a private hearing with the school board. *Id.* If a request is made, the hearing must be held within twenty days, but no earlier than ten days, unless the parties agree to a hearing date outside the statutory time frame. *Id.* Prior to the hearing, an "exchange of information" takes place. *Id.* At least five days prior to the hearing, the board must furnish the teacher with any documentation that may be presented at the hearing, as well as a list of persons who may address the board in support of the termination recommendation. *Id.* At least three days before the hearing, the teacher must likewise provide any documentation the teacher expects to present, together with the names of any persons who may address the board on behalf of the teacher. *Id.* The information must be exchanged pursuant to this time line, unless otherwise agreed by the board and the teacher. *Id.*

The board must hold the hearing in a manner best suited to "ascertain and conserve the substantial rights of the parties." *Id.* § 279.16(4). However, the process and procedure is to be "as summary as reasonably" possible. *Id.* The board does not adhere to "technical or formal rules of procedure" and is not bound by common law or statutory rules of evidence. *Id.*

The evidence at the hearing is limited to the "specific reasons" stated in the termination notice and recommendation. *Id.* § 279.16(1). The superintendent presents evidence and argument on the issues presented. *Id.* The teacher is also permitted to present evidence and argument and may cross-examine witnesses. *Id.* The parties may also stipulate to evidence. *Id.*

The presiding officer of the board is authorized to administer oaths to witnesses and is required to issue subpoenas for witnesses and for the production of documents as the board or teacher "may designate." *Id.* § 279.16(2). If a subpoenaed witness refuses to attend the hearing or if the witness appears and refuses to testify or produce documents requested by a *subpoena duces tecum*, the board must report the matter to the district court. *Id.* § 279.16(3). On receipt of the report, the district court is required to resolve the matter as if it occurred in a proceeding before the court. *Id.*

## IV. Production of Documents.

We first consider the issue of whether or not the district court abused its discretion by ordering the superintendent to produce the documents described in fifty-two of the seventy-five categories of production. We begin our resolution of this issue by examining the legislature's intent with regard to a teacher's ability to compel discovery of documents and information prior to the hearing. *See Ayers v. Straight,*

422 N.W.2d 643, 645 (Iowa 1988) (stating that "[i]n interpreting statutes, our ultimate goal is to ascertain and give effect to the intention of the legislature"). Our goal is to determine whether the legislature intended a teacher to obtain documents in the course of a termination proceeding in the manner pursued by Gianforte.

The preceding overview of the statutory framework governing the process of terminating the contract of a teacher reveals the legislature only provided the teacher with two opportunities to formally obtain documents and information prior to the hearing. First, the teacher's complete personnel file of employment with the school district, including all periodic evaluations, must be made available to the teacher during the proceeding. Iowa Code § 279.15(2). Second, the teacher is entitled to receive all documentation expected to be presented to the board by the superintendent at the hearing in support of the recommendation to terminate the contract. *Id.* No statutory provision specifically permits the teacher to discover or obtain other documents prior to the hearing.

While the documents and information made available under the statute to a teacher prior to the hearing may generally be adequate for the teacher to successfully argue against a recommendation of termination at a private hearing, we have recognized that additional documents and information may be needed in some cases to enable a teacher to conduct an adequate defense. *See Smith v. Bd. of Educ.*, 293 N.W.2d 221, 225 (Iowa 1980) (recognizing the legislative purpose of prehearing disclosure of information described in the statute is to help facilitate prehearing preparation and enable the parties to better present their cases). For example, we have held that the evaluations of other teachers in the school system may be obtained by a teacher so the board can compare the performance of the teacher with the performances of

other teachers. *In re Gillespie*, 348 N.W.2d 233, 237 (Iowa 1984). We have also held that transcripts of students scheduled to testify against the teacher may be obtained by the teacher to permit the teacher to challenge the credibility of the students by suggesting the students were motivated to testify against the teacher due to low grades given to the students by the teacher. *Id.* These examples recognize the statute does not prohibit production of documents that are reasonably necessary for the teacher's defense against a recommendation of termination.

Although the statute does not describe a method for the teacher to obtain or discover additional documents prior to the hearing, the statute does allow the teacher to request the board to issue a subpoena to secure the presence of a witness at the hearing and for the witness to produce documents designated by the teacher.[1] While Gianforte argues the statutory process to subpoena a witness permits a teacher to request documents from the superintendent in addition to those described in the statute, the superintendent generally argues that the legislature could not have intended for the subpoena process to operate in such a way because all documents expected to be presented at the hearing are required to be exchanged under the statute prior to the hearing. At a minimum, the superintendent argues, the statute does not permit a teacher to request the issuance of a subpoena for the production of documents after the three-day deadline for disclosure of documents. The

---

[1]The statute does not specifically permit a teacher to use the subpoena power of the board to obtain documents prior to the hearing. Instead, the statute describes the use of the subpoena as a means to secure the appearance of witnesses at the hearing and the production of documents by witnesses. *See* Iowa Code § 279.16(1) (describing the participants at a hearing, including "witnesses for the parties"); *id.* § 279.16(2) (authorizing the board to administer oaths and cause subpoenas to be issued for "such witnesses" and for the production of documents); *id.* § 279.16(3) (describing procedure when a subpoenaed witness "refuses to attend" or "appears and refuses" to produce documents).

superintendent asserts that allowing the teacher to seek additional documents by subpoena beyond the three-day deadline is inconsistent with the legislature's clear language; otherwise, the teacher could easily circumvent the unequivocally written statutory deadline in any case.

In *Smith*, we observed the role of the board and the court in deciding if evidence not included in the prehearing exchange of information could nevertheless be accepted at the hearing. 293 N.W.2d at 225. In doing so, we held the board properly accepted testimony from a rebuttal witness who was not disclosed in the superintendent's prehearing list of witnesses. *Id.* We recognized the exchange-of-information deadline serves to provide a fair hearing by eliminating surprise at the hearing and facilitating advance preparation. Yet, we also observed the deadline should not operate to broadly exclude undisclosed rebuttal witnesses at the hearing because a party cannot be expected to disclose information in advance of the hearing that was not known at the time of the deadline. *Id.* Thus, we found the legislature only intended the witness-list requirement to limit testimony presented during a party's case in chief, but not rebuttal. *Id.* Clearly, the pretrial disclosure deadlines have meaning and may preclude the presentation of undisclosed witnesses at the hearing. However, *Smith* reveals the deadlines must be applied consistent with the statutory goals of a fair and timely hearing.

The approach we took in *Smith* in response to undisclosed witnesses is compatible with allowing a party to present undisclosed documents not included in the prehearing exchange of information. As with undisclosed witnesses, undisclosed documents may be accepted at the hearing when doing so does not offend the purposes of the requirement for the documents to be exchanged. Accordingly, we reject

the superintendent's argument that the statutory exchange-of-information process precludes a teacher from seeking undisclosed documents from a superintendent by means of a subpoena. Instead, when the board issues a subpoena to a superintendent to produce undisclosed documents designated by the teacher, the superintendent is given the choice to comply with the subpoena or refuse to comply. Compliance will allow the hearing to proceed as scheduled, yet permit the superintendent to ask the board to reject the documents if the purposes of the requirements for pretrial disclosure are adversely impacted. Refusal to produce the documents transfers the matter to the district court and will likely delay the hearing until the dispute is resolved by the court.[2]

The district court intervenes in a termination proceeding only when the subpoenaed witness fails to attend the hearing or, as in this case, refuses to produce the designated documents. Iowa Code § 279.16(3). When a subpoenaed witness refuses to produce the designated document, the issue turns to the reasons for the refusal, including noncompliance with the statutory disclosure deadlines. Consistent with our approach in *Smith*, the district court must not only consider a teacher's need for the documents and the reasonableness of the request, but also the ability of the board or the superintendent to timely produce the documents. A subpoena for the production of documents not included in the pretrial exchange of information is compatible with the

---

[2]Nothing in the statute prevents the parties from engaging in voluntary discovery in a reasonable manner to enable the statute to operate to provide a fair and prompt private hearing. The process of adjudicating disputes between parties in a fair manner is best served when the parties voluntarily pursue discovery in a reasonable, cooperative manner. *See* Iowa R. Civ. P. 1.517(5) (recognizing requirement of parties in civil litigation to make a good-faith effort to resolve discovery disputes). This approach is especially appropriate in teacher-termination proceedings, where the stakes can be high, but the time to prepare for the hearing is very limited.

statutory framework when the documents requested are necessary for the teacher to defend against the termination recommendation and are otherwise discoverable, but only if the board or the superintendent can comply with the subpoena consistent with the statutory goal of a prompt hearing.

In this case, the superintendent argues the directive in the subpoena to produce the seventy-five categories of documents was overly burdensome. He also argues he was not provided a reasonable time for compliance. *See* Iowa R. Civ. P. 1.1701(4)(*d*)(1) (requiring court to quash a subpoena failing to allow a reasonable time for compliance).

In ordering the superintendent to produce the bulk of the requested documents, the district court focused narrowly on the reasons the teacher wanted to examine each category of documents and basically ordered the production of those documents that could potentially be helpful to the teacher in the preparation of his case. While the prehearing production of documents must be consistent with the goal of providing a teacher with a fair opportunity to challenge the termination recommendation and present a defense, this goal cannot be pursued to the exclusion of the other legislative goal of a prompt, informal and summary hearing. The termination process must not become mired in discovery expeditions, or otherwise slowed by the parties' prehearing conduct, inconsistent with the intended objectives of the legislature.

We conclude the district court abused its discretion in this case to order production of documents by failing to balance the legislative directive for a prompt, informal and summary hearing with the teacher's right to a fair hearing. Gianforte clearly failed to show he was attempting to obtain undisclosed documents while simultaneously respecting the statutory intent for a prompt, informal, and summary hearing. Even

though some of the requests for documents may have related to relevant information, the timing and volume of the request, as well as the inclusion of requests for irrelevant documents, revealed the request was inconsistent with the statutory timeline for a hearing. This conclusion is supported by the circumstances presented in this case.

Gianforte was provided approximately six weeks to prepare for his hearing. He was timely provided with the documents and information required under the statute to prepare for the hearing. Yet, he did not engage in any informal discovery of additional documents during the course of the proceedings. He made no claim the superintendent refused to voluntarily produce the specific documents he needed to prepare for the hearing.

Instead, Gianforte essentially waited until the eve of the rescheduled hearing to request thousands of additional documents as part of a broad, sweeping discovery expedition. The production request left the superintendent with little or no opportunity to timely produce the documents, to sort through the specific requests with counsel to determine the nature and scope of the documents requested, or to formulate objections and other responses. The last minute production request virtually assured Gianforte of another delay in the hearing.

In the end, Gianforte effectively hijacked the termination process and imposed delays unrelated to the need to defend against the recommendation. Considering these circumstances, we conclude the district court abused its discretion to order the production of additional documents. The district court should have quashed the subpoena issued to the superintendent by the presiding officer of the board. Accordingly, we quash the subpoena and remand the case to the school board to proceed with a prompt hearing. On remand, the teacher shall

not be precluded from requesting a new subpoena for the production of documents in a manner consistent with this opinion.

## V. Interrogatories to School Board Members.

We next turn to the issue of whether the district court abused its discretion by ordering the board members to answer an interrogatory propounded by the teacher. The district court is only authorized to intervene in a teacher termination proceeding when a witness fails to comply with a subpoena. Iowa Code § 279.16(3). There is no additional authority for the district court to order a witness to respond to interrogatories. *See id.* Furthermore, the district court's authority to resolve disputes over the refusal of a witness to comply with a subpoena does not imply authority to order discovery through interrogatories. *See In re Melodie L.*, 591 N.W.2d 4, 7 (Iowa 1999) (holding that, when a court exercises judicial authority pursuant to a statute, such authority "must be expressly provided or exist by plain implication. . . . [The exercised authority] must be necessary and essential to carry out the purposes of the statute." (citations omitted)). Accordingly, the district court abused its discretion to resolve witness disputes by ordering discovery not permitted under the statute. *See Bousman*, 630 N.W.2d at 796. Yet, this conclusion does not mean a teacher in a termination proceeding is not protected from claims of bias or prejudice.

Our law establishes a presumption that board members acting as adjudicators are objective. *Bd. of Dirs. v. Justmann*, 476 N.W.2d 335, 340 (Iowa 1991). This general presumption of objectivity prevails against assertions of bias and prejudice absent "direct, compelling evidence to the contrary." *Id.* The presumption may be overcome by evidence that a fair hearing before the board is not possible due to such circumstances as prejudgment voting or when board members act as investigators in

the absence of a subsequent evidentiary hearing. *See Wedergren v. Bd. of Dirs.*, 307 N.W.2d 12, 17–18 (Iowa 1981); *Keith v. Cmty. Sch. Dist.*, 262 N.W.2d 249, 258–61 (Iowa 1978).

Although chapter 279 does not provide a procedure by which a teacher may raise claims of bias or prejudice, school board members are quasi-judicial officers when exercising their statutory duty to adjudicate teacher-termination proceedings. *Courtright v. Consol. Indep. Sch. Dist.*, 203 Iowa 26, 30, 212 N.W. 368, 370 (1927). Generally, presiding judges and judicial officers are immune from testifying. *See* Iowa R. Evid. 5.605 (prohibiting presiding judges from testifying as witnesses); *see also State v. Gardner*, 661 N.W.2d 116, 117–18 (Iowa 2003) ("This rule [prohibiting judges from testifying] is violated whenever the judge functions as a witness, even though the judge may not actually take the stand to testify."). By analogy, the same rule of quasi-judicial immunity would apply to written questions propounded to board members acting as quasi-judicial officers: as with testimony, interrogatories involve answers to questions under oath. Board members, like judges, must generally be immune from providing any form of testimony at hearings.

Nevertheless, this immunity does not prevent claims of board member bias or prejudice from being raised and addressed. Board members are subject to " 'the common-law rule of disqualification applicable to judges.' " *Keith*, 262 N.W.2d at 261 (quoting 1 Am. Jur. 2d *Administrative Law* § 63 (now substantially found at 2 Am. Jur. 2d *Administrative Law* § 38 (2004))) (further holding common-law rule " 'extends to every tribunal exercising judicial or quasi-judicial functions' "). We have generally described this rule as follows:

> Any board member who harbors prejudice or predilection should recuse himself or herself. Board members possessing personal knowledge must place it aside or, if they are unable

> to do so, themselves step aside. The board must be mindful that the decision turns on its own finding of the presence or absence of qualifications and not on the recommendation of an administrator or prior employer—although these may of course be received and considered.

*Bishop v. Keystone Area Educ. Agency No. 1*, 275 N.W.2d 744, 752 (Iowa 1979). As with judges, recusal by board members will depend on the remoteness of the interest and the extent or degree of the interest. *See State v. Mann*, 512 N.W.2d 528, 533 (Iowa 1994). Yet, the process does not rest entirely with the adjudicator. In the event board members do not disqualify themselves on their own, a party is permitted to raise the issue by motion on the record. *See State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976). This record provides a means for judicial review of the claim of bias or prejudice.

The recusal and disqualification process reveals teachers are adequately protected from fears of bias or prejudice by board members just as litigants in civil proceedings are protected from fears of judicial bias or prejudice. These procedures justify the school board's general immunity from testifying or answering interrogatories, protect teachers from bias and prejudice, and support the limited role of the district court when intervening in termination proceedings.

**VI. Conclusion.**

We reverse the decision of the district court and remand the case to the school board to proceed with the termination hearing without further delay and without the production of additional documents pursuant to the subpoena issued to the superintendent.

**REVERSED AND REMANDED.**

All justices concur except Wiggins, J., who takes no part.