# IN THE COURT OF APPEALS OF IOWA

No. 18-0584
Filed July 24, 2019

**DAN CHARLESTON,**
     Plaintiff-Appellant,

**vs.**

**POLK COUNTY CIVIL SERVICE COMMISSION,**
     Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

A former sergeant appeals an order affirming the termination of his employment by the Polk County Sheriff. **AFFIRMED.**

Stephen T. Fieweger, Davenport, for appellant.

John P. Sarcone, Polk County Attorney, and Megan L. Gavin, Assistant Polk County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge**

The Polk County Sheriff fired Sergeant Dan Charleston, alleging he was insubordinate and allowed hostile behavior in the workplace. The Polk County Civil Service Commission found the firing was warranted. As did the district court. Charleston now appeals the judicial review order.

Finding substantial evidence in the record to support the commission's decision, we affirm the termination of Charleston's employment. And because Charleston did not present direct and compelling evidence to overcome the presumption of honesty and integrity of the commissioners, we conclude he had a fair hearing.

## I.    Background Facts and Proceedings

The Polk County Sheriff hired Charleston as a deputy in 1997 and promoted him to sergeant in 2002. In 2015, Charleston worked in the court services division, overseeing transportation and temporary lodging for inmates awaiting court appearances.[1] At one point, Charleston's duties included assigning deputies to accompany inmates to and from the courthouse. But because of complaints of favoritism, in May 2015, Chief Kevin Schneider shifted that responsibility to a different sergeant and limited Charleston's duty to verifying and updating the assignment list. Lieutenant Ron Richards followed up by verbally informing Charleston that moving forward, Charleston would need to consult his supervisor before modifying any assignments.

---

[1] The sheriff's office called that division "court staging."

In June 2015, Sheriff Bill McCarthy sent Charleston a letter of reprimand. The letter accused Charleston of changing the deputies' assignments without notifying his supervisor, a violation of an internal rule prohibiting insubordination, given the earlier order.

Less than a year later, in April 2016, the sheriff suspended Charleston for two days for violating the same rule—insubordination based on changing the court-trip assignments without notifying his supervisor. Charleston unsuccessfully appealed the suspension to the commission.

The next month, a string of incidents and corresponding disciplinary recommendations prompted Sheriff McCarthy to meet with Charleston. First, in May 2016, Charleston adjusted the assignment list without consulting his supervisor. That supervisor, Lieutenant Shawn VanHoozer, reprimanded Charleston for insubordination and recommended demotion. Next in the chain of command, Captain James Brown, reviewed the matter and instead recommended firing Charleston based on his disciplinary record. Chief Schneider agreed termination was appropriate, noting the sheriff's office could not count on Charleston to follow orders.

In the same timeframe, Polk County labor relations manager Mike Campbell was investigating complaints of gender bias and a hostile work environment in the court-staging division. Campbell interviewed Deputy Beverly Pursley, who recalled an incident when she was eating lunch at her work station and Charleston interrupted, ordering her to pick up toilet paper in the holding cells, a "disgusting" task she had never seen male deputies required to do. In his interview with

Charleston, Campbell mentioned an employee had complained about having to leave lunch to check the toilet paper rolls.

The day after Campbell interviewed Charleston, Deputy Pursley was eating lunch in the court-staging area when she heard Deputy Mark VanDePol say, "I'm going to lunch now. Do we need toilet paper in the H [holding] cells?" Pursley recalled hearing Charleston and VanDePol "chuckle about it in low tones." Deputy Pursley testified she believed Charleston must have told VanDePol about her complaint: "I thought they were making fun of me." The fact they found humor in the situation made her feel "angry" and "humiliated." Deputy VanDePol admitted making the comment and said, "it was a running joke in the back." VanDePol said he did not remember who told him about it, but he was aware it was an issue.

Finding Charleston violated internal rules for neglect of duty and lack of cooperation,[2] Lieutenant VanHoozer recommended terminating Charleston's employment. Captain Brown approved the termination recommendation, believing Charleston had a responsibility to prevent a hostile work environment. Chief Schneider agreed, stating he believed Charleston intended to "bully" or "intimidate" Deputy Pursley by showing her complaints would not be kept confidential.

After reviewing Charleston's record and the recommendations from the sergeant's superiors, as well as meeting with Charleston to discuss the allegations, Sheriff McCarthy fired Charleston. In his written report, Sheriff McCarthy pointed

---

[2] The rule on neglect read: "Any employee . . . who acts in the performance of his/her official duties in a manner which could bring discredit upon the Sheriff's Office or upon any employee of the Sheriff's Office, may be considered neglect[ful]." The rule on cooperation provided: "Employees shall conduct themselves in a manner that will foster the greatest harmony and cooperation between each other and organizational units of the Sheriff's Office."

to Campbell's investigation concluding Charleston's supervision led to workplace hostility, noting the incident involving Deputy Pursley alone "evidenced harassment and gender bias."

Charleston appealed his termination to the civil service commission. As the hearing opened in July 2017, Charleston moved to disqualify the three commissioners—Florence Buhr, Helen Youngs, and William Hansen. Charleston asserted he could not receive a fair hearing because he ran for sheriff as a Republican in 2012 and 2016, while the commissioners belonged to the Democratic Party.[3] Charleston also noted he once sued the commission in federal court, though the suit had been dismissed. On the record, the commissioners professed their ability to be fair and impartial and denied the motion to disqualify. The commission enlisted the help of Administrative Law Judge (ALJ) Margaret LaMarche to explain procedural issues during the hearing.

After four days of hearing evidence, the commission affirmed the decision to terminate Charleston's employment. When considering the claim of insubordination, the commission found, "Charleston has repeatedly failed to comply with the verbal order that was given to him to notify his supervising lieutenant of the changes to the court list and the reasons for the changes." As for the claim he contributed to a hostile work environment, the commission concluded, "As a supervisor, [Sergeant] Charleston should not have participated by chuckling at the comment, and he should have taken prompt action to correct Deputy VanDePol's behavior on June 9, 2016, but he failed to do so." In arriving at its

---

[3] Commissioner Hansen stated on the record: "I am a Republican, been a Republican for many years."

conclusion on the second issue, the commission found Deputy Pursley more credible than Charleston. The commission concluded the sheriff's office followed all proper procedures in deciding to fire Charleston.

Charleston appealed the commission's decision to the district court. *See* Iowa Code § 341A.12(2) (2017). The court found "[s]ubstantial evidence existed to support the commission's finding that Charleston was ordered to notify supervising lieutenants before making changes to the court list and that he violated that order, which satisfied the definition of insubordination." The court also found substantial evidence supporting the commission's findings related to the incident where Charleston laughed at Deputy VanDePol mocking Deputy Pursley's complaint. The court rejected Charleston's claim he did not receive a fair hearing, reasoning he "has not produced direct, compelling evidence that any of the commissioners held biases and prejudices against him that should have disqualified their service on the commission." So the court affirmed the commission's decision. Charleston now appeals the district court ruling.[4]

## II.     Scope and Standard of Review

We review appeals under section 341A.12 for the correction of legal error. *Currans v. Linn Cty. Civil Serv. Comm'n*, 540 N.W.2d 469, 472 (Iowa Ct. App. 1995). We ask: did the district court properly decide the commission reached its result "in good faith and for just cause"? *Id.* (citing *Hawkinson v. Louisa Cty. Civil*

---

[4] The copy of the district court's ruling Charleston produced in the appendix includes several disparaging handwritten margin notes, for instance "B.S." and "What?" These notes are unprofessional and outside the record on appeal; they should not appear in the appendix. *See* Iowa R. App. P. 6.801 (stating only original documents and exhibits "constitute the record on appeal").

*Serv. Comm'n*, 431 N.W.2d 350, 353 (Iowa 1988)). To flesh out "good faith" and "just cause," our supreme court explained:

> "Good faith" means honesty of intention. In determining whether cause exists, the district court must focus "on the ability and fitness of an employee to discharge the duties of his or her position, bearing in mind the legislative purpose to protect the public against incompetence and maintain high standards of performance."

*Haberer v. Woodbury Cty.*, 560 N.W.2d 571, 575 (Iowa 1997) (quoting *Hawkinson*, 431 N.W.2d at 353). We apply a substantial-evidence test. *Id.* Evidence meets that test "when a reasonable mind could accept it as adequate to reach the same findings." *Currans*, 540 N.W.2d at 472.

## III.  Analysis

### A.  Insubordination

To start, Charleston claims the record lacks substantial evidence showing he needed to consult with his supervisor when modifying the assignment list. Charleston acknowledges receiving a verbal order in May 2015 directing him to report changes to the assignment list. But he maintains a year later, when he informed his supervisor, Lieutenant VanHoozer, of a change to the schedule, VanHoozer sent him a text message telling him to deal with things as he normally would. Charleston insists he was following that May 2016 directive, rather than the verbal order of May 2015, when he changed the assignment list without informing his supervisor. Given that sequence of events, he disputes the commission's finding of insubordination by failing to obey a lawful order.

On this specific issue, the commission found:

> The text message exchange between [Lieutenant] VanHoozer and [Sergeant] Charleston following another deputy's absence on May 4, 2016 could not reasonably be interpreted as altering or changing the

order for [Sergeant] Charleston to notify his supervisor when the change was due to an absence. [Lieutenant] VanHoozer thanked [Sergeant] Charleston for notifying him on May 4, 2016, but he never told [Sergeant] Charleston that the prior order had been changed.

The internal rule defines insubordination as: "The willful neglect or deliberate refusal of any employee to obey any lawful order given by a supervisor . . . ." Insubordination may be "just cause" to terminate an employee. *See Johnson v. Bd. of Educ.*, 353 N.W.2d 883, 886 (Iowa Ct. App. 1984). Here, substantial evidence supports the conclusion Charleston failed to obey a verbal order to notify his supervisor when he changed the assignment list. Charleston was aware of the order, as shown by his statements and the fact he received a letter of reprimand and a two-day suspension for previously disobeying the order. The text message from VanHoozer did not rescind the existing order; the message simply instructed Charleston how to proceed after he notified his supervisor on that occasion.

In the alternative, Charleston argues he "was not afforded a fair and impartial hearing . . . in light of the administrative law judge refusing to allow the issue of reasonableness of the order to be considered by the commission." In support of his argument, Charleston points to this exchange following a relevance objection by opposing counsel:

> MR. FIEWEGER: The question becomes how did this order prevent alleged favoritism, sexual harassment, et cetera.
> ALJ LaMARCHE: And, again, the order and whether it was a good idea, effective, that's not at issue here. The issue is whether or not he obeyed the order. I'm just—my concern is that we're going to go off on another tangent that takes us away from the issues that we have here. We have a lot of ground to cover. And I just—I feel as though it will expend too much time on issues that are not directly at issue here.

Based on the ALJ's statement, Charleston insists the district court erred in concluding the order was reasonable.

Assuming Charleston properly raised this argument, it lacks merit. Despite the ALJ's reservations, the commission *did* address the reasonableness of the order:

> The verbal order requiring Charleston to notify his supervisor of any changes to the court list and the reasons for the changes was a lawful order and it was reasonable in light of the favoritism complaints that had been made. The duty to notify his supervisor was not onerous and could be accomplished through a phone call, a text message, or an email.

If Charleston is arguing the commission's finding lacked substantial evidence, we disagree. The sheriff's internal rule mandates compliance with "any lawful order." We have held "it is not unreasonable for an employee to refuse to commit an unlawful act in the workplace." *Clay v. City of Cedar Rapids*, 577 N.W.2d 862, 865 (Iowa Ct. App. 1998). But Charleston offered no proof the verbal order directed him to act unlawfully. Rather, he insists as a sergeant he was "too busy" during the day to contact his supervisor about every change to the court schedule. Charleston's assertion that it was inconvenient to follow the order does not undermine the substantial evidence in the record supporting the commission's finding it was reasonable. It is not our job on appeal to micromanage the sheriff's department. *Cf. Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) ("[E]mployment discrimination laws have not vested in federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers.").

**B.    Neglect of Duty; Harmony and Cooperation.**

Charleston next asserts the record lacks substantial evidence he violated the rules governing neglect of duty and disharmony in the workplace.  He insists Campbell did not tell him which employee complained about picking up toilet paper.  And without this information, Charleston contends he could not have shared Deputy Pursley's complaint with Deputy VanDePol.  Charleston claims he and VanDePol did not realize Pursley was in earshot of the joking comment.  Charleston disputes the proof he intimidated or harassed Pursley.

In the end, Charleston's assertion cannot survive our deference to the commission's credibility findings.  As part of its duties, the commission must assess credibility "of the witnesses who appear and testify."  *See Kennedy v. Civil Serv. Comm'n of Council Bluffs*, 654 N.W.2d 511, 513 (Iowa 2002).  After listening to the evidence, the commission concluded, "The consistent, direct, and detailed statements and testimony of Deputy Pursley were more credible and persuasive" than those by Charleston.  We accept the commission's assessment because it had first-hand access to the witnesses.  *See id.*; *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007) ("Just because the interpretation of the evidence is open to a fair difference of opinion does not mean the commissioner's decision is not supported by substantial evidence." (citing *ABC Disposal Sys., Inc. v. Dep't of Nat. Res.*, 681 N.W.2d 596, 603 (Iowa 2004))).

Not only did the commission have the benefit of evaluating the witnesses in person, the timing of the described conduct corroborated Deputy Pursley's version of events.  During Campbell's investigation, Pursley complained about Charleston ordering her to stop eating lunch and pick up toilet paper rolls in the holding cells.

On June 8, Campbell told Charleston someone[5] leveled that complaint. The next day, Deputy VanDePol announced he was going to lunch and asked Charleston if any of the holding cells needed toilet paper. Given this sequence of events, the commission could reasonably deduce Charleston revealed confidential information obtained in his interview with Campbell. Moreover, rather than chastise VanDePol for making light of a coworker's complaint, Charleston shared a laugh with the male deputy. Charleston showed disrespect toward Deputy Pursley, treating her complaint as a joke.

In short, this record contains substantial evidence Charleston neglected his duty by acting in a manner that "could bring discredit upon the Sheriff's Office or upon any employee of the Sheriff's Office" and failing to promote harmony and cooperation in the workplace.

### C. Fair Hearing.

On top of his substantial evidence challenges, Charleston claims he did not receive a fair hearing before the commission. He cites a request by Commissioner Youngs to speak to the sheriff's attorney over a break and her "admonishment" during his testimony that he broke the "chain of command." He also complains Commissioner Buhr improperly questioned him about his management style. And he believes she was biased because she did not disclose that years ago her son had been friends with Captain Brown.

---

[5] And while Charleston appears to rely on the fact that Campbell did not reveal the name of the complainant, it is unclear how this fact would bolster Charleston's argument he did not reveal the confidential information. Instead, it suggests Charleston could deduce the complainant's identity even without being told.

Charleston did not object when these incidents occurred. Thus, the district court found it unclear "whether Charleston has properly preserved the issue for review on appeal to this court." But the court overlooked the error-preservation problem and found none of the commissioners had disqualifying biases. Like the district court, we will address this issue on the merits despite our concern Charleston did not preserve this issue for appeal.

The commission proceedings carry a rebuttable presumption of regularity. *See Anstey v. Iowa State Commerce Comm'n*, 292 N.W.2d 380, 390 (Iowa 1980) (explaining objector had burden of showing reversible bias). Likewise, the commissioners enjoy "a presumption of honesty and integrity." *See Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 848 (Iowa 2009). "This general presumption of objectivity prevails against assertions of bias and prejudice absent 'direct, compelling evidence to the contrary.'" *In re Gianforte*, 773 N.W.2d 540, 549 (Iowa 2009) (citation omitted).

We see no error in the district court's conclusion Charleston failed to present direct and compelling evidence to overcome the presumption of the commissioners' honesty and integrity. In addressing similar claims, we have stated:

> [The employee] did not present evidence the commission failed to act in good faith in upholding his termination. Although the commissioners had connections to the sheriff, as the district court noted, there is nothing in the record to suggest their decision affirming his decision to terminate [the employee] was made on anything other than the record before it.

*Crooks v. Floyd Cty. Civil Serv. Comm'n*, No. 09-0016, 2009 WL 2392731, at *1 (Iowa Ct. App. Aug. 6, 2009).  The same is true here; nothing in the record signals the commission based its decision on improper grounds.

As a last gasp, Charleston accuses ALJ LaMarche of acting like a prosecutor rather than neutral arbiter.  At the hearing, Charleston's counsel complained when Commissioner Buhr called LaMarche the commission's attorney.  LaMarche clarified:  "I'm not their attorney.  You're correct.  I've been retained, however, as the [ALJ] to assist them on the procedures for the hearing."  Charleston cannot show prejudice from ALJ Marche's performance.

For these reasons, we decline to disturb the district court's affirmance of the commission's findings.

**AFFIRMED.**